IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-00115-WJM

UNITED STATES OF AMERICA,

Plaintiff,

v.

**1. ERIC MORTENSEN**

Defendant.

---

### SENTENCING STATEMENT IN SUPPORT OF DEFENDANT'S MOTION FOR VARIANT/NON-GUIDELINE SENTENCE

Comes now Mr. Eric Mortensen through CJA counsel, Richard J. Banta, pursuant to Rule 47, Fed. R. Cr. P. and D.C.Colo.LCrR 32.1 and respectfully submits this Sentencing Statement in support of his Motion for a Variant/Non-Guideline Sentence. In support of this Sentencing Statement, Mr. Mortensen states the following:

### <u>Sentencing Mitigation Report and Factors that Warrant a Variant Sentence Below the Advisory Sentencing Guideline Range</u>

This is a marijuana case. Mr. Mortensen appears before the Court having entered a guilty plea to the offenses of Count One, Conspiracy to Distribute a Controlled Substance, (i) Less than 50 Kilograms of Marijuana, a Schedule I Controlled Substance, and (ii) Mixtures and Substances Containing Tetrahydrocannabinol "THC", a Schedule I Controlled Substance; Count Four, Using/Carrying a Firearm During and in Relation to a Drug Trafficking Crime; and Count Five, Prohibited Person in Possession of a Firearm/Ammunition. Mr. Mortensen does not disagree with the advisory sentencing guideline range calculated in the Presentence Investigation Report

1

(PSIR). However, as set forth below, Mr. Mortensen believes that a downward variance from the sentencing guideline range is appropriate for a number of reasons, including that the United States Sentencing Commission's determination that one gram of THC is equivalent to 167 grams of marijuana is not based on empirical data or evidence.[1] Further, in this rapidly changing area of drug law, the federal government is woefully behind the states in dealing with marijuana. It is still listed as a schedule I controlled substance (along with heroin, ecstasy and LSD) making it on its face a more serious drug offense than methamphetamine, cocaine and fentanyl (Schedule II ) or Ketamine (Schedule III).[2]

Accurate calculation of the advisory sentencing guidelines is the starting point of the sentencing analysis, but the advisory sentencing guidelines are simply that, "advisory." They are but one of the seven identified criteria the court must consider when fashioning a sentence that is sufficient, but not greater than necessary, pursuant to 18 U.S.C. § 3553(a). Mr. Mortensen is appreciative of the analysis undertaken by the probation officer in determining that a variant sentence from the bottom of the calculated  sentence of 188 months to 120 months is appropriate. This variance recommendation appears to be based on Mr. Mortensen's difficult upbringing coupled with mental health and substance abuse issues. Mr. Mortensen maintains that a further variance is justified based on the distorted sentencing guideline structure for THC.

---

[1] There is scant research available addressing the1:167 ratio for THC to marijuana. Counsel contacted the Sentencing Resource Counsel of the Federal Public & Community Defender's office. The SRC provided a copy of the Appellant's brief in an Eight Circuit case, United States v. Carlson, 2015 WL512624 (C.A. 8), which at argument VII, pages 55-61addresses the Sentencing Commission's lack of an empirical basis for the ratio. A copy of the brief is attached.

[2] It is submitted that the Court can take judicial notice of the robust national discussion that has and is taking place regarding marijuana. Attached as exhibits are the President's statement and proclamation issued on October 6, 2022 regarding marijuana: Statement from President Biden on Marijuana Reform (Exhibit 1) and A Proclamation on Granting Pardon for the Offense of Simple Possession of Marijuana (Exhibit 2).

**<u>Nature and Circumstances of the Offense</u>** – Mr. Mortensen has pleaded guilty and has accepted full responsibility for his involvement in the instant offense and expressed remorse for his actions. As documented in the PSIR, codefendant Ms. Charran was responsible for obtaining marijuana from various drug dispensaries. Mr. Mortensen was primarily responsible for advertising, packaging, and shipping the marijuana to customers ***(Paragraph 9 of Document 83 (Presentence Investigation Report))***. Both Mr. Mortensen and Ms. Charran admit to distributing 7.38 kilograms of THC and 18.73 kilograms of marijuana. The combined weight of the THC and marijuana is 26.11 kilograms.

THC, or Tetrahydrocannabinol, is the major psychoactive component and one of the 113 cannabinoids recognized in cannabis (*National Institute of Health, Library of Medicine*). The greater the level of THC, the greater the psychoactive, or mood-altering effect of the marijuana. A direct comparison can be made to that of methamphetamine. The greater the purity of methamphetamine, the greater effect of the drug. However, this Court and a number of District Courts, including Senior Judge Arguello, have determined, *"purity (*in methamphetamine cases*) is simply not an empirical method for determining the seriousness of a drug crime nor the appropriate sentence – particularly because it is no longer an indicator of position in a drug organization.*" United States v. Pereda*, 2019 WL 463027 (D. Co. 2019) and *United States v. Uribes, 19-cr-00437-WJM.*

 Mr. Mortensen maintains that a similar analysis can and should be applied in prosecutions involving THC. It does not appear that the THC guidelines are empirically based. The THC guidelines produce a distorted penalty structure under the Guideline's advisory ranges, and the THC purity distinction created by the guideline is not an appropriate proxy for the

seriousness of the offense. This is especially true given the availability of marijuana now sold legally in 21 states plus the District of Columbia.[3]

When law enforcement agents searched Mr. Mortensen's apartment, they located four firearms. The only time Mr. Mortensen was observed handling or in physical possession of a firearm was on a video he posted on social media. The facts surrounding Count Four are that Mr. Mortensen showed and demonstrated a firearm on a social media site on January 8, 2021. There is no evidence that Mr. Mortensen ever had a firearm on his possession when he left his apartment, or that he ever had any of the firearms on his person when he went to the post office to ship packages of marijuana. The evidence confirms that three of the four firearms were legally purchased by codefendant Ms. Charran from Cabela's and Sportsman's Warehouse in the Denver Metro area *(Paragraph 18 of Document 83 (Presentence Investigation Report).* Mr. Mortensen believes that the fact pattern of Count Four is distinguishable from the fact pattern in typical prosecutions for a violation of 18 U.S.C. 924(c) where the firearm is an integral part of the offense.

Mr. Mortensen was arrested on March 26, 2021. He has spent a total of 735 days, or 24 months and five days, in pretrial detention. During the course of his detention, Mr. Mortensen

_____

[3] The possession and consumption of personal use amount of marijuana is now legal in the following states and Washington, D.C.: Alaska, Arizona, California, Colorado, Connecticut, Illinois, Maine, Maryland, Massachusetts, Michigan, Missouri, Montana, Nevada, New Jersey, New Mexico, New York, Oregon, Rohde Island, Vermont, Virginia, Washington, Washington, D.C.

 In addition, the following states have approved of the consumption of marijuana for medical purposes: Alabama, Arkansas, Florida, Iowa, Louisiana, Minnesota, Mississippi. New Hampshire, North Dakota, Ohio, Oklahoma, Pennsylvania, South Dakota, Utah, West Virginia.

has been transferred to four different detention facilities by the U.S. Marshals Service as a result of him being assaulted and threatened with assaults. Mr. Mortensen reported that for the first 1½ months of his pretrial detention he was detained at the GEO facility in Aurora, Colorado. While there he was assaulted on one occasion at which time he "shattered his left knee" *(Paragraph 72 of Document 83 (Presentence Investigation Report))*. He was subsequently transferred to the Washington County, Colorado Jail where he remained for approximately nine months and was assaulted on two separate occasions.[4] He was then transferred to the Federal Detention Center in Englewood, Colorado. He was then placed in the Special Housing Unit (SHU) at the adjacent Englewood FCI as he feared for his safety in general population. He remained in solitary confinement in the SHU for approximately one month before he was ultimately transferred to the Clear Creek County, Colorado Jail where he is currently detained. It is also important to note that Mr. Mortensen has been in pretrial detention during the height of the COVID lockdown protocols. Mr. Mortensen tested positive for COVID in 2022 *(Paragraph 73 of Document 83 (Presentence Investigation Report)).* As such, Mr. Mortensen's pretrial detention has been extremely punitive.

**History and Characteristics of Mr. Mortensen** –  Paragraphs 64 through 66 of the PSIR confirm that Mr. Mortensen had a difficult and tragic childhood comprised of abandonment and abuse. In summary, Mr. Mortensen's birth mother was addicted to methamphetamine and "he was born a meth baby" *(Paragraph 66 of Document 83 (Presentence Investigation Report)).*  For reasons unknown, his birthparents gave him up for adoption as an infant. Mr. Mortensen had a close and carrying relationship with his adopted mother. However, tragedy struck again, and his adoptive mother died of cancer when he was 12 years old. At the age of 12

---

[4] One of the assaults led to the filing of criminal charges in Washington County against the individuals responsible for the assault. The District Attorney of Washington County ultimately elected to not proceed with the case.

he had lost both his birthmother and his adoptive mother. His adoptive father struggled with alcohol abuse and was physically abusive, punching and beating Mr. Mortensen when he was drunk. His adoptive father died when Mr. Mortensen was 22 years old. His lone adoptive brother decided not to maintain a relationship with Mr. Mortensen because of Mr. Mortensen's criminal history.

In addition to the above identified struggles, Mr. Mortensen was diagnosed with Attention Deficit/Hyperactivity Disorder (ADHD) at age six. This information was confirmed in records obtained from the Minnesota Department of Corrections. Mr. Mortensen was prescribed Ritalin which he took until he was approximately age 15. Mr. Mortensen has also struggled with his own addiction issues. The Minnesota Department of Corrections records confirm that he was diagnosed with alcohol dependence, cannabis dependence, and hallucinogen abuse on October 19, 2014.

In spite of his difficult childhood and substance abuse issues, Mr. Mortensen took strides to better his life by attending the Century College – American Welding School in Minnesota. Records confirm that he entered the school in September 2015 and obtained his Entry Welder I Certificate after completing 660 hours of study on June 6, 2016. He completed his Welding Level II Certificate after completing 736 hours of study on August 24, 2016, and completed his Welding Level III Certificate after completing an additional 736 hours of study on December 9, 2016.[5] As noted in the Presentence Investigation Report, Mr. Mortensen was employed as a welder in the aerospace industry from 2017 through 2019.

---

[5] These documents will be transmitted to the probation office. D.C.Colo.LCrR 32.1(e).

**Conclusion and Sentencing Analysis**

The following factors regarding the nature and circumstances of the instant offense and characteristics of the defendant should be considered when fashioning the appropriate sentence in in this case:

1. Application of the THC base offense level, under the United States Sentencing Guidelines results in a sentencing guideline range that is greater than necessary to achieve the objectives of sentencing as outlined in 18 U.S.C. § 3553(a).[6] Mr. Mortensen believes that there should be no distinction between THC and marijuana as the purity of a substance is not indicative of the seriousness of the offense and there appears to be no empirical data to support the Sentencing Commission establishing a ratio of 167 to 1 grams regarding THC and marijuana. The combined total drug weight of the THC and marijuana is 26.11 kilograms. A total of 26.11 kilograms of marijuana establishes a base offense level 16 (at least 20 kilograms but less than 40 kilograms. After applying the additional specific offense characteristic adjustments and the adjustment for acceptance of responsibility, Mr. Mortensen's Total Offense Level is 17. A Total Offense Level 17 and a Criminal History Category VI establishes an advisory sentencing guideline range of 51 to 63 months;

2. The facts surrounding Mr. Mortensen's conviction for Using/Carrying a Firearm During a Drug Trafficking Crime as outlined *supra* in this sentencing statement;

---

[6] A Base Offense Level of 30 as calculated in the PSIR using the 1:167 ratio of THC to marijuana results in a base offense level greater than the following violent crimes: Involuntary manslaughter (BOL 22, USSG 2A1.4); Aggravated assault with serious bodily injury (BOL 19, USSG 2A2.2(3)); Assault with intent to commit murder (BOL 27, USSG 2a2.1(a)(2)); Criminal Sexual Abuse of a Minor under 18 (BOL 27, USSG 2A3.2); Robbery with Discharge of a Firearm (BOL 27, USSG 2B3.1(a)(2)(A); and Trafficking In Material Involving the Sexual Exploitation of a Minor (BOL 18 or 22, USSG 2G2.2).

3. The punitive nature of Mr. Mortensen's pretrial detention consisting of numerous assaults, transfers, punitive confinement, detention during the COVID pandemic, and Mr. Mortensen own COVID illness;

4. Mr. Mortensen's difficult, tumultuous, and abusive childhood; and

5. The sentence for the instant offense will be the longest term of incarceration Mr. Mortensen served. Mr. Mortensen is currently 33 years old. He will be in his early to mid-forties by the time of his release from confinement. Sentencing Commission data has demonstrated that there is a much less chance of recidivism for a defendant in his mid-forties.

It is respectfully submitted that after considering a cumulation of the above sentencing factors, a sentence of 51-months as to Counts One and Five and sixty-months consecutive as to Count Four for a total sentence of 111 months followed by a three-year term of supervised release results in s sentence that is sufficient but not greater than necessary to achieve the purposes enumerated in 18 U.S.C. § 3553(a).

Respectfully submitted,

s/*Richard J. Banta*
Richard J. Banta
501 S. Cherry Street
Suite 1100-mb11
Denver, CO 80209
303-860-8048
FAX:303-333-1195
E-mail: rjbanta@comcastt.net
Attorney for Defendant
Eric Mortensen

8

**CERTIFICATE OF SERVICE**

      I certify that on March 17,  2023 I electronically filed the foregoing Sentencing Statement in Support of Defendant's Motion for a Variant/Non-Guideline sentence with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


                                     *s/Richard J. Banta*
                                      Richard J. Banta