IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 21-cr-00115-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. ERIC MORTENSEN,

    Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
## FOR VARIANT/NON-GUIDELINE SENTENCE

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits the following response to the defendant's motion for a variant/non-Guideline sentence (the "Motion"). ECF #90, 92.

In his Motion, the defendant does not dispute that the Guidelines range is properly calculated as 188 to 235 months' imprisonment, to be followed by a mandatory consecutive 60 months imprisonment, for a total of 248 to 295 months' imprisonment. Instead, he asks the court to grant him an extraordinary variant sentence of 51 months to be followed by 60 months imprisonment—a discount of 137 months from the bottom of his Guidelines range. The defendant's primary argument is that this is just a marijuana case.

As an initial matter, this is not "just a marijuana case." This is a case of a 33-year-old man who has, incredibly, accumulated 31 criminal history points and numerous felony convictions for violent offenses. Over the course of that criminal history, he

1

violated terms of probation and other court-ordered release countless times.  At the time he is sentenced for the instant offenses, he will still have six pending cases across four different jurisdictions, in three different states.

Ultimately, this is a case of a defendant who, for his entire life, has believed the rules do not apply to him.  It remains unlawful for people like the defendant to sell marijuana.  He knows that.  Everyone knows that.  But, displaying the true colors of someone who has managed to climb his way up to criminal history category VI, the defendant obviously did not care.  For months, he made an extraordinarily good living purchasing dispensary marijuana and selling it on social media to anyone who wished to purchase it.

This is also the case of a violent felon who repeatedly used firearms in furtherance of his marijuana-selling business.  As described in the PSR and the Government's sentencing statement, the defendant displayed numerous firearms on social media in an effort to appear intimidating to anyone who might wish to do him harm.  He insists that the *only* time he ever handled the firearms was on the social media videos.  This belies common sense.  On the videos, he clearly displays comfort and familiarity with the firearms, and in some of the videos he explains features of the firearms.  In a video posted to the social media account on January 20, 2021, for instance, the defendant expresses pleasure at the optics installed on a particular gun, by overlaying "green dot so sexy" on the frame, alongside THC he offered for sale:

2






The Government has no evidence that the defendant took the firearms out of the apartment, but the idea that the *only* time he ever handled them was to make social media videos is absurd.

Finally, this court should reject the defendant's attempts to persuade the court to disregard the Guidelines calculation for cases involving THC. In making this argument, he draws an analogy to Judge Arguello's rejection of the methamphetamine Guidelines based on purity in *United States v. Pereda*, 2019 WL 463027 (D. Colo. Feb. 6, 2019). Judge Arguello's analysis as to the methamphetamine Guidelines, however, is not applicable to the instant case. In *Pereda*, Judge Arguello explained that the methamphetamine Guidelines were first revised 1989, after Congress established mandatory minimums for methamphetamine offenses in 1988. The Guidelines were revised again after Congress, in 1998, again amended the statutory penalties for methamphetamine. In other words, the methamphetamine Guidelines were simply pegged to the statutory mandatory minimums. *Id.* at 2. There is no evidence that, with respect to marijuana and THC, the Sentencing Commission did anything similar.

Judge Arguello also noted that the distinction between high- and low-purity methamphetamine is no longer a proxy for a defendant's role in a drug trafficking organization, since the average purity of methamphetamine has long been 90% or greater. *Id.* at 4. Again, with respect to THC and marijuana, there is no evidence that there was ever a distinction made on this basis.

The defendant also cites to an analysis presented in an appellant's brief in the Eighth Circuit arguing that the THC Guidelines lack empirical foundation. When the issue was considered on appeal, the Eighth Circuit rejected the defendant's argument. *United States v. Carlson*, 810 F.3d 544, 556 (8th Cir. 2016) (noting that the "district court did not err by relying on the guideline commentary from § 2D1.1 to apply a 1:167 THC to marijuana conversion ratio"). Ultimately, here, the defendant simply states that

4

there is no empirical support for the Guidelines' marijuana-to-THC ratio, but provides scant evidence for this proposition. This court is entitled to rely on the Sentencing Guidelines conversion ratio, at least as a starting point for sentencing in this matter.

Importantly, this is not a defendant who warrants the extreme leniency that he seeks. He was a drug dealer with complete disregard for the rules that the rest of abide by. The Government leaves open the possibility that, in the right case, the court might consider varying from the THC Guidelines, even in the radical way the defendant here requests. This is not the right case.

The Government respectfully requests that the Court sentence the defendant to the bottom of his Guidelines range, to a total of 248 months' imprisonment.

Respectfully submitted this 27th day of March, 2023.

        COLE FINEGAN
        United States Attorney

By:   *s/ Andrea Surratt*
       Andrea Surratt
       Assistant United States Attorney
       U.S. Attorney's Office
       1801 California St., Suite 1600
       Denver, CO 80202
       Telephone: (303) 454-0100
       e-mail: Andrea.Surratt@usdoj.gov
       Attorney for the Government